**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| *NEXEN TIRE CORPORATION,*<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 26-cv-03563 |

**COMPLAINT**

Plaintiff Nexen Tire Corporation ("Nexen"), by and through its undersigned attorneys, alleges and states as follows:

1. This action contests the final results of the U.S. Department of Commerce's ("Commerce") administrative review of the antidumping duty order on passenger vehicle and light truck tires ("PVLT tires") from the Republic of Korea, covering the period of review July 1, 2023 through June 30, 2024 ("POR"). *See* Passenger Vehicle and Light Truck Tires From the Republic of Korea: Final Results of the Antidumping Duty Administrative Review; 2023-2024, 91 Fed. Reg. 42,926 (Dep't Commerce July 13, 2026) ("Final Results"). The challenged determinations, findings, and conclusions are set out primarily in (a) the Final Results; (b) Commerce's Issues and Decision Memorandum, dated July 7, 2026, and filed July 8, 2026 ("IDM") issued in connection with the Final Results; and (c) the Nexen Tire Corporation Final Results Margin Calculation memorandum, also issued in connection with the Final Results.

2. In the Final Results, Commerce reversed its Preliminary Results determination granting Nexen a level of trade ("LOT") adjustment, and found that Nexen failed to demonstrate

that its home market sales were made at two distinct levels of trade, resulting in a significantly increased antidumping margin for Nexen.

## PARTIES

3. Plaintiff Nexen is a corporation organized under the laws of the Republic of Korea and is a producer and exporter of subject merchandise. Nexen was a mandatory respondent in the administrative review giving rise to the Final Results.

4. Defendant United States is the proper defendant to this action under 5 U.S.C. § 702 and 28 U.S.C. § 1581(c).

## JURISDICTION

5. This action is filed pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) to contest the Final Results issued by Commerce in the above-referenced administrative review of the antidumping duty order on PVLT tires from the Republic of Korea (A-580-908). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

6. The Court has the same powers at law and in equity as a United States district court and may enter judgment upon the basis of the record before the Court, and, if appropriate, remand the matter to Commerce for further proceedings. 28 U.S.C. §§ 1585, 2643(c)(1).

## STANDING

7. Nexen was a mandatory respondent in, and participated throughout, the administrative review that resulted in the challenged Final Results, including by submitting questionnaire responses, participating in verification, and filing a case brief and rebuttal brief. Nexen is therefore an "interested party" within the meaning of 19 U.S.C. § 1677(9)(A) and has standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(a)(A).

## TIMELINESS OF THE ACTION

8. Parties challenging Commerce determinations pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) regarding antidumping duty administrative reviews must file a summons within 30 days of the date of publication in the Federal Register of the final results. 19 U.S.C. § 1516a(a)(2)(A)(i). Commerce published the Final Results on July 13, 2026.

9. This action was timely commenced within thirty days of the date of publication of the Final Results through the filing of the Summons on August 11, 2026. This Complaint is timely filed within 30 days of the filing of Nexen's Summons, and no later than September 10, 2026. Therefore, both the Summons and this Complaint have been timely filed in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of this Court.

## GENERAL PLEADINGS

### I. The Administrative Review

10. On October 30, 2024, Commerce issued its initial questionnaire to Nexen, requesting, among other things, information and analysis regarding Nexen's claimed levels of trade ("LOT") in the home market and the United States.

11. On December 6, 2024, Nexen timely submitted its Section A questionnaire response, including the following information: (a) a quantitative analysis of its indirect selling expenses ("ISE") comparing home market and export sales by claimed LOT (Appendix A-18); (b) a selling functions chart quantifying differences in the intensity of selling activities across claimed LOTs (Appendix A-17); and (c) a table showing the quantity of salespersons by market and sales channel (Appendix A-17). Nexen's submissions demonstrated that home market sales incurred significantly greater indirect selling expenses than export sales and that great differences exist among different home market sales channels in level of indirect selling expenses.

12. On January 3, 2025, Nexen timely submitted its Section B through D questionnaire responses.

13. Commerce did not issue Nexen a supplemental questionnaire regarding the LOT issue. At no time did Commerce question the evidence submitted by Nexen for the differences in LOT or the LOT adjustment or request additional evidence of LOT differences.

14. On January 8, 2026, Commerce published the Preliminary Results of the administrative review, in which it found that Nexen's home market sales were made at two distinct levels of trade (HMLOT1 and HMLOT2) as compared to a single U.S. level of trade (USLOT1), based on substantial differences in selling activities between Nexen's home market sales channels. Commerce therefore granted Nexen a LOT adjustment. *See* Passenger Vehicle and Light Truck Tires from the Republic of Korea: Preliminary Results of Antidumping Duty Administrative Review; 2023-2024, 91 Fed. Reg. 694 (Jan. 8, 2026) ("Preliminary Results"), and accompanying Preliminary Decision Memorandum.

15. From January 19 through January 22, 2026, Commerce conducted verification of Nexen's questionnaire responses, including the LOT evidence, and, in a report dated February 19, 2026, stated that Commerce found no discrepancies in the evidence contained in Nexen's questionnaire responses.

16. On February 26, 2026, Nexen timely filed its case brief. On March 25, 2026, Nexen timely filed its rebuttal brief. Among other things, Nexen's rebuttal brief noted that Petitioner's case brief suggested that Nexen's quantitative LOT analysis was insufficient. Nexen's rebuttal brief requested that, in the event Commerce were to find Nexen's quantitative analysis insufficient based on Petitioner's arguments, Commerce should solicit additional LOT data or analysis from

Nexen before issuing its final results. Commerce did not respond to this request and issued no further questionnaire to Nexen.

17. On July 8, 2026, Commerce issued the IDM and published the Final Results, reversing the Preliminary Results with respect to Nexen's LOT adjustment. Commerce stated that "Nexen did not provide sufficient quantitative analysis to determine that its sales were made at different LOTs," and that Nexen "failed to meet the burden to show that its claimed LOT differences impact price comparability." IDM at 19-20.

18. In the IDM, Commerce stated that Nexen's ISE comparison and headcount table did not "provide sufficient support for the selling functions chart" and its qualitative analysis, and that "there is no information on the record to show that these expenses impact price comparability or how this analysis supports Nexen's qualitative analysis of selling function differences between LOTs." IDM at 19.

19. Commerce further stated that Nexen's failure to substantiate its LOT claim "is not a deficiency but simply a failure to meet the burden of the party seeking an adjustment," citing *Dong-A Steel Co. v. United States*, 475 F. Supp. 3d 1317 (Ct. Int'l Trade 2020), and *Wheatland Tube v. United States*, 755 F. Supp. 3d 1304 (Ct. Int'l Trade 2025), for the proposition that Commerce has no obligation to request additional information where the respondent has not met its burden to support a LOT adjustment. IDM at 20.

20. Commerce also stated that the verification report's finding of no discrepancies did not establish that Nexen's evidence met its burden, explaining that verification "does not make findings or conclusions regarding how the facts obtained at verification will ultimately be treated in Commerce's determinations," and only confirms the accuracy of information already on the record. IDM at 20.

21. Commerce's finding that Nexen did not provide sufficient quantitative analysis to determine that its sales were made at different LOTs caused Nexen's home market and U.S. sales to be compared without regard to level of trade, resulting in the averaging of transactions across all levels of trade and increasing Nexen's antidumping margin beyond the effect of the denial of the LOT adjustment alone.

## II. **The Governing Legal Standard**

22. Section 773(a)(1)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677b(a)(1)(B)(i), provides that, to the extent practicable, Commerce will calculate normal value based on sales at the same level of trade as the U.S. sales. Section 773(a)(7)(A) of the Act, 19 U.S.C. § 1677b(a)(7)(A), provides that Commerce shall adjust normal value for a LOT difference that involves the performance of different selling activities and is demonstrated to affect price comparability, based on a pattern of consistent price differences.

23. Commerce's regulations provide that sales are made at different levels of trade if they are made at different marketing stages (or their equivalent), and that substantial differences in selling activities are a necessary, but not sufficient, condition for such a finding. 19 C.F.R. § 351.412(c)(2).

24. Under 19 C.F.R. § 351.401(b)(1), the interested party in possession of relevant information bears the burden of establishing, to Commerce's satisfaction, the amount and nature of a claimed adjustment.

25. Section 782(d) of the Act, 19 U.S.C. § 1677m(d), provides that, if Commerce determines that a response to a request for information does not comply with the request, Commerce shall promptly inform the person submitting the response of the nature of the deficiency

and, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency.

## STATEMENT OF CLAIM

### COUNT ONE
**(Commerce's Denial of Nexen's Level of Trade Adjustment Is Unsupported by Substantial Evidence and Is Otherwise Not in Accordance with Law)**

26. Nexen incorporates paragraphs 1 through 25 above by reference.

27. Commerce's determination that Nexen failed to submit sufficient evidence to support a level of trade adjustment was not supported by substantial evidence and was otherwise not in accordance with law.

### COUNT TWO
**(Commerce's Finding That Nexen Failed to Demonstrate Two Distinct Levels of Trade Is Unsupported by Substantial Evidence and Is Otherwise Not in Accordance with Law)**

28. Nexen incorporates paragraphs 1 through 27 above by reference.

29. Commerce's determination that Nexen failed to demonstrate that its home market sales were made at two distinct levels of trade was not supported by substantial evidence and was otherwise not in accordance with law.

### COUNT THREE
**(In the Alternative, Commerce's Denial of Nexen's Level of Trade Adjustment Without Notice and an Opportunity to Cure Violated 19 U.S.C. § 1677m(d))**

30. Nexen incorporates paragraphs 1 through 29 above by reference.

31. Commerce's denial of the level of trade adjustment without first notifying Nexen of any perceived deficiency in its evidence and providing Nexen an opportunity to remedy or explain such deficiency, as required by 19 U.S.C. § 1677m(d), was not supported by substantial evidence and was otherwise not in accordance with law.

**COUNT FOUR**
**(In the Alternative, Commerce's Unexplained Reversal Between the Preliminary and Final Results Was Not in Accordance with Law)**

32. Nexen incorporates paragraphs 1 through 31 above by reference.

33. Commerce's reversal, in the Final Results, of its Preliminary Results determination that Nexen was entitled to a level of trade adjustment and had demonstrated two distinct levels of trade, on the same administrative record and without an intervening change in the applicable legal standard, was inadequately explained, was not supported by substantial evidence, and was otherwise not in accordance with law.

**COUNT FIVE**
**(In the Alternative, Commerce's Denial of Nexen's Level of Trade Adjustment Is Inconsistent with Commerce's Own Prior Practice and Is Otherwise Not in Accordance with Law)**

34. Nexen incorporates paragraphs 1 through 33 above by reference.

35. Commerce's determination in the Final Results that Nexen failed to demonstrate two distinct levels of trade in its home market sales, and its consequent denial of a level of trade adjustment, departed without adequate explanation from Commerce's prior practice and treatment of Nexen's level of trade claims and supporting evidence in prior segments of this proceeding, including the original less-than-fair-value investigation and the two administrative reviews immediately preceding the POR.

36. Commerce's unexplained departure from its own prior practice and treatment of substantially similar evidence was not supported by substantial evidence, and was otherwise not in accordance with law.

**PRAYER FOR RELIEF**

Wherefore, Nexen respectfully requests that this Court:

(1) hold that the Final Results are unsupported by substantial evidence and are

otherwise not in accordance with law;

(2) remand the Final Results to Commerce with instructions to issue a new determination consistent with this Court's decision, including, as appropriate, reinstatement of the level of trade adjustment and the two-level-of-trade finding made in the Preliminary Results;

(3) in the alternative, and in the event the Court does not order reinstatement of the level of trade adjustment and the two-level-of-trade finding made in the Preliminary Results, or a properly reasoned redetermination on the existing record, order Commerce on remand to reopen the administrative record to solicit and receive supplemental information from Nexen regarding the level of trade issues addressed in Counts One and Two, including the connection between Nexen's indirect selling expense analysis, its headcount data, and price comparability, and the basis for its claimed levels of trade, before issuing any redetermination denying Nexen a level of trade adjustment or finding that Nexen's home market sales were made at a single level of trade; and

(4) grant Nexen such other and further relief as this Court deems just and proper.

Dated: September 9, 2026

Respectfully submitted,

/s/ J. Scott Maberry
J. Scott Maberry
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006
Telephone: (202) 747-1909
Facsimile: (202) 747-1901
smaberry@sheppard.com
*Counsel for Plaintiff*